**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TRACY L. COLLIER, Plaintiff, v. L. BROWN, et al., Defendants. | ) ) ) ) ) ) ) ) ) ) ) | NO. ED CV 06-174-CBM(E) MEMORANDUM AND ORDER |

**PROCEEDINGS**

Plaintiff, a state prisoner proceeding pro se, filed this civil rights action for damages on February 21, 2006, alleging that prison officials at the Chuckawalla State Prison violated Plaintiff's constitutional rights. The Third Amended Complaint, the operative pleading, names as Defendants: Correctional Officers L. Brown, B. Terry and J. LaCuesta, Sergeant K. Gibbons, Captain B. Mathews, and Deputy Warden J. Cortez, all sued in their individual capacities only.

///

On August 1, 2008, Plaintiff filed: (1) a Motion for Summary Judgment with respect to his claims against Defendants Brown, Gibbons and LaCuesta ("Motion I"); and (2) a Motion for Summary Judgment with respect to his claims against Defendants Cortez, Terry and Mathews ("Motion II"). On September 3, 2008, Defendants filed Oppositions to both Motions. On the same date, Defendants filed Evidentiary Objections.

**SUMMARY OF ALLEGATIONS OF THIRD AMENDED COMPLAINT**

In his unverified Third Amended Complaint, Plaintiff alleges the following:

On June 5, 2005, Plaintiff allegedly was confined in administrative segregation "for a violation of 314", assertedly in retaliation for filing staff complaints (Third Amended Complaint ["TAC"], p. 11).[1] On July 18, 2005, Defendant Gibbons allegedly assaulted Plaintiff at the instigation of Defendant Brown, and Defendant LaCuesta assertedly failed to protect Plaintiff from the assault (TAC, pp. 7, 11). On July 28, 2005, the warden allegedly released Plaintiff back to the general prison population (TAC, p. 11).

On August 18, 2005, Plaintiff allegedly was transferred to Ironwood State Prison and confined in the "hole," assertedly in retaliation for filing a staff complaint (id.). Defendant Terry

[1] The reference to "314" is an apparent reference to California's indecent exposure statute, California Penal Code section 314.

thereafter allegedly produced an assertedly unlawful and retaliatory lock-up order to confine Plaintiff in administrative segregation (id.).

On November 22, 2005, Defendant Mathews allegedly confined Plaintiff in administrative segregation, and Defendant Terry allegedly told Plaintiff that Plaintiff could receive an indefinite SHU (Security Housing Unit) term depending on the outcome of his court case (TAC, p. 12). On December 16, 2005, Defendant Cortez allegedly released Plaintiff from administrative segregation (id.). However, on December 22, 2005, Defendants Terry and Mathews allegedly caused Plaintiff to be returned to administrative segregation in the absence of a lock-up order (id.).

Among the exhibits attached to the Third Amended Complaint is an inmate grievance, bearing a submission date of December 14, 2004, in which Plaintiff alleged that various female staff members, including Defendant Brown, had conspired to harass Plaintiff and accuse him falsely of sexual misconduct (TAC, Exhibits, pp. 18-19). Plaintiff also attaches an "Administrative Segregation Unit Placement Notice," dated August 18, 2005, indicating Plaintiff was placed in administrative segregation "to preserve the integrity of an investigation involving [Plaintiff's] allegations of misconduct by CVSP's Administrative Segregation Staff following your Administrative Segregation placement of 06/06/05" (TAC, Exhibits, p. 21). The Notice indicated Plaintiff would be retained in the Administrative Segregation Unit at Ironwood State Prison pending the conclusion of the investigation and review by the Classification Committee (id.).

Defendant Mathews signed the document as Administrative Reviewer (id.). Another exhibit indicates that, on August 25, 2005, Plaintiff appeared at a classification hearing chaired by Defendant Cortez (TAC, Exhibits, p. 22). The Committee decided to retain Plaintiff in administrative segregation pending the investigation (id.).

A Classification Committee document dated December 16, 2005 indicates that, on August 23, 2006, the Riverside County District Attorney's Office accepted the case against Plaintiff for prosecution (TAC, p. 24). The Classification Committee, chaired by Defendant Cortez, decided to release Plaintiff from administrative segregation and to recommend a transfer to Ironwood State Prison (id.).

Another document shows that, on December 22, 2005, the Classification Committee, whose members included Chairperson Cortez and Defendants Mathews and Terry, amended the December 16, 2005 order, and directed that Plaintiff be confined in administrative segregation (TAC, p. 25). The Committee noted that Plaintiff's Central File revealed that Plaintiff had three prior Rules Violation Reports for indecent exposure, sexual conduct and masturbation, that the Riverside County District Attorney's Office had accepted the indecent exposure case for prosecution, and that a jury trial in that case was set for January 11, 2006 (id.). The Committee indicated that Plaintiff's sexual misconduct violations met the criteria for referral to a Departmental Review Board ("DRB") for consideration of an indeterminate SHU term (id.). Therefore, the Committee amended its action of December 16, 2005, and ordered Plaintiff confined in administrative segregation pending a final decision of the DRB

referral (id.).

Plaintiff alleges four claims for relief:

**Claim One (Retaliation against Defendant Brown; Excessive Force against Defendants Gibbons and LaCuesta)**

In Claim One, Plaintiff alleges that, on July 18, 2005, Defendant Brown, who was not regularly assigned to administrative segregation, approached Plaintiff's cell, looked in, and then walked away without saying anything (TAC, p. 7). Two hours later, Defendant Gibbons allegedly handcuffed Plaintiff, squeezing the handcuffs to reduce blood flow to Plaintiff's hand and fingers (id.). Plaintiff allegedly was pushed into an empty office, where Gibbons assertedly summoned Defendant LaCuesta and instructed him to close the door (id.). Defendant Gibbons allegedly began to question Plaintiff concerning the reasons for Plaintiff's administrative segregation placement (id.). Plaintiff allegedly responded: "Look it up -- where's Capt. Gonzalez?" (id.). Defendant Gibbons allegedly went behind Plaintiff, placed his hand around the back of Plaintiff's neck, and slammed the right side of Plaintiff's face down on the desktop, stating "don't fuck with my female staff understand!" According to Plaintiff, Gibbons repeatedly pounded Plaintiff's face against the desktop (id.).

Defendant LaCuesta allegedly stood watching and making sure the door remained closed (id.). When Plaintiff assertedly yelled "Get your hands off me," Gibbons allegedly stopped the assault and assertedly told Plaintiff that Defendant Brown had told Gibbons all

about Plaintiff (id.). Gibbons allegedly found out that Brown assertedly had issued Plaintiff a Rules Violation Report charging Plaintiff with masturbation and that Plaintiff had filed a grievance against Brown alleging retaliation (id.). Plaintiff allegedly asked how this information was relevant to the assault, and Gibbons assertedly replied that he didn't know what was going on, but that he would back his staff (id.).

Plaintiff alleges Defendant Brown retaliated against Plaintiff for two staff complaints Plaintiff filed against Brown by manipulating Defendant Gibbons into assaulting Plaintiff for Brown's personal benefit (id.). Plaintiff alleges that Defendant Gibbons allegedly inflicted excessive force on Plaintiff, and that Defendant LaCuesta failed to protect Plaintiff from the alleged assault and failed to report the alleged assault (id.).

**Claim Two (Retaliation against Defendant Cortez)**

In Claim Two, Plaintiff alleges that Defendant Cortez unlawfully caused Plaintiff to be confined in administrative segregation for ten months, assertedly in retaliation for Plaintiff's filing of a grievance concerning the alleged July 18, 2005 assault (TAC, p. 8). Plaintiff alleges that, on August 18, 2005, Plaintiff was removed from the general prison population for complaining to the Warden concerning the alleged assault (id.). Defendant Cortez allegedly requested that Plaintiff receive a 90-day "hole" placement (id.). Plaintiff allegedly was ordered to be transferred to the Ironwood State Prison "hole," assertedly pending an investigation of the alleged assault

(id.). From August 18, 2005 to December 22, 2005, Plaintiff allegedly was never interviewed or given any paperwork concerning any investigation (id.).

On December 22, 2005, Defendant Cortez allegedly confined Plaintiff in administrative segregation, assertedly pending the outcome of a court proceeding "that was at closure on an institutional level 7-28-05" (id.) (original emphasis). Cortez allegedly confined Plaintiff in administrative segregation pending a "DRB review for SHU placement Plaintiff was never qualif[ied] for" (id.).

**Claim Three (Retaliation against Defendant Terry)**

In Claim Three, Plaintiff alleges that, on November 22, 2005, Defendant Terry issued an allegedly illegal lock-up order in retaliation for Plaintiff's staff complaints (TAC, p. 9). The order allegedly confined Plaintiff in administrative segregation pending a DRB referral for a possible indeterminate SHU placement for which Plaintiff allegedly did not qualify, and pending a court proceeding which was "closed on an institution level" (id.).[2]

**Claim Four (Retaliation against Defendant Mathews)**

In Claim Four, Plaintiff alleges that, on November 22, 2005,

[2] Claim Three also contains equal protection allegations (see TAC, p. 9). However, the Court previously dismissed Plaintiff's equal protection claim. See Memorandum and Order filed November 6, 2007. Consequently, the equal protection allegations cannot state any claim for relief.

Defendant Mathews unlawfully confined Plaintiff in administrative segregation, assertedly in retaliation for Plaintiff's assault complaint (TAC, p. 10). Defendant Mathews, along with Defendant Terry, presented their assertedly illegal lock-up order to Defendant Cortez at a classification hearing on December 16, 2005 (id.). Cortez allegedly rejected the lock-up order (id.). Defendants Mathews and Terry then allegedly confined Plaintiff in administrative segregation for 90 days (id.). Plaintiff allegedly remained in administrative segregation until June 2, 2006 (id.).

**STANDARDS GOVERNING SUMMARY JUDGMENT**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of offering proof of the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("Celotex"). Once the moving party's burden is met, the party opposing the motion is required to go beyond the pleadings and, by the party's own affidavits or by other evidence, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). The party opposing the motion must submit evidence sufficient to establish the elements that are essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Because Plaintiff, the moving party, bears the burden of proof at trial, Plaintiff must produce evidence sufficient for the Court to hold that no reasonable trier of fact could find other than for Plaintiff. See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 63 F. Supp. 2d 1145, 1153 (C.D. Cal. 1999), aff'd, 370 F.3d 869 (9th Cir. 2004); In re Williams, 50 F. Supp. 2d 951, 955-56 (C.D. Cal. 1999); see also Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir. 1998) (where moving party bears burden of proof, "its own submissions in support of the motion must entitle it to judgment as a matter of law [citation]"); Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998) (party with burden of proof on issue cannot obtain summary judgment "unless the evidence that he provides on that issue is conclusive [citation]"); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986); W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984). Plaintiff "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in that party's favor." In re Williams, 50 F. Supp. 2d at 956 (citation omitted; original emphasis).

Where different ultimate inferences reasonably can be drawn, summary judgment is inappropriate. Miller v. Glenn Miller Productions, Inc., 454 F.3d at 988. "At the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." Porter v. California Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005) (citation omitted).

///

///

A factual dispute is "genuine" only if there is a sufficient evidentiary basis upon which a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might affect the outcome of the lawsuit under governing law. Id.

## DISCUSSION

### I. Motion for Summary Judgment With Respect to Claims Against Defendants Brown, Gibbons and LaCuesta (Motion I).

In support of Motion I, Plaintiff has provided a purported declaration of Plaintiff, which states in full:

> Tracy Collier declares under penalty of perjury, I am the plaintiff in this case, the complaint alleges that I was a prisoner at CVSP and while placed in adseg, I was conspired and retaliation [sic] against witch [sic] lead to plaintiff being assaulted by prison guards in vilation [sic] of Plaintiff first and eight amendments [sic].

This purported declaration appears only to summarize the contents of the complaint. The purported declaration is wholly insufficient to show entitlement to summary judgment on Plaintiff's claims against Defendants Brown, Gibbons and LaCuesta.

Plaintiff also has submitted a Statement of Undisputed Facts, which is sworn, and hence may be considered an affidavit for purposes

of Rule 56. In his sworn Statement of Undisputed Facts, Plaintiff alleges that he filed complaints against Defendant Brown on December 17, 2004 for retaliation and conspiracy (Motion I, Statement of Undisputed Facts, p. 2). Plaintiff alleges that, on July 18, 2005, Defendant Brown looked in Plaintiff's cell, although Brown allegedly was not a regular "adseg officer" (id.). Plaintiff asserts that, approximately two hours later, Defendant Gibbons allegedly told Plaintiff that the captain wanted to see Plaintiff (id.). Gibbons allegedly handcuffed Plaintiff and squeezed the handcuff to the bones of Plaintiff's wrist, cutting off the blood flow (id.). Gibbons allegedly pushed Plaintiff forcefully across the dayroom floor to an empty area and allegedly summoned Defendant LaCuesta (id.). Defendant Gibbons began to question Plaintiff concerning the reasons for Plaintiff's administrative segregation placement, and Plaintiff allegedly responded: "Look it up where is Cpt Gonzales" (id.). Plaintiff alleges that Gibbons went behind Plaintiff, placed his hands around the back of Plaintiff's neck, and slammed the right side of Plaintiff's face on the desktop, stating "Don't fuck with my female staff understand" (id.). According to Plaintiff, Gibbons repeatedly pounded Plaintiff's face against the desktop (id.). Defendant LaCuesta allegedly stood watching and making sure the door was closed (id.). Plaintiff allegedly yelled "get your hands off me," and Defendant Gibbons allegedly stopped the assault (id.). Gibbons allegedly told Plaintiff that Defendant Brown had told Gibbons all about Plaintiff (id.). Gibbons allegedly said that he did not know what was going on but that he was going to back his staff (id.).

///

///

Defendants have not submitted any evidence in opposition to Motion I. Defendants contend that Plaintiff's evidence is insufficient to support his claims, and that triable issues of fact exist precluding summary judgment for Plaintiff. Defendants also assert qualified immunity.

**A. Retaliation Claim against Defendant Brown**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations and footnote omitted). Plaintiff's sworn Statement of Undisputed Facts does not "establish beyond peradventure all of the essential elements" of Plaintiff's retaliation claim against Defendant Brown. See In re Williams, 50 F. Supp. 2d at 956 (citation omitted; original emphasis). Although Plaintiff alleges he filed complaints against Brown, Plaintiff does not allege any adverse action taken by Brown "because of" Plaintiff's filing of complaints. Plaintiff alleges only that, many months after his complaints against Brown, Brown looked into Plaintiff's cell and then, some two hours later, Gibbons allegedly assaulted Plaintiff and said that Brown told Gibbons "all about" Plaintiff. As a matter of law, these allegations do not "establish beyond peradventure all of the essential elements" of a claim for retaliation. Therefore, Plaintiff is not entitled to

summary judgment on his retaliation claim against Defendant Brown.

**B. Excessive Force Claim Against Defendants Gibbons and LaCuesta**

The Eighth Amendment prohibits the use of "excessive physical force" against prisoners. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hudson v. McMillian, 503 U.S. 1, 6 (1992). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. at 6-7; see also Jeffers v. Gomez, 267 F.3d 895, 910-11 (9th Cir. 2001). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause. . . ." Wilson v. Seiter, 501 U.S. 294, 299 (1991) (citation and internal quotations omitted).

Defendants allege that Plaintiff provides only "unsupported conclusions," and that Plaintiff has provided no admissible evidence to support his allegation that Defendant Gibbons allegedly pounded Plaintiff's face against a desktop (see Motion I, p. 8).[3] Defendants also allege that Plaintiff's own exhibits contradict Plaintiff's version of the incident (id.).

---

[3] Possibly misled by the title of the document, Defendants appear to have overlooked the fact that Plaintiff's Statement of Undisputed Facts is verified and thus may be considered an affidavit for purposes of Rule 56.

In support of his Motion, Plaintiff relies on, inter alia, Defendants' Responses to Plaintiff's Requests for Admissions (Motion I, Exhibits F, G, H). In Defendant Gibbons' Responses, Defendant Gibbons denied Plaintiff's allegations that: (1) Brown brought Plaintiff to Gibbons' attention on July 18, 2005; (2) Gibbons removed Plaintiff from his cell in response to what Brown had told Gibbons; (3) Gibbons squeezed Plaintiff's handcuffs tight so as to close against Plaintiff's wrists; (4) Gibbons forcefully pushed Plaintiff across the dayroom and into an office for no reason; (5) in the office, Gibbons started to confront Plaintiff about why Plaintiff was in the "hole" and about female staff and Brown; (6) Gibbons told Plaintiff: "Don't fuck with . . . female staff"; (7) Gibbons began assaulting Plaintiff while Plaintiff was sitting handcuffed; (8) Plaintiff told Gibbons Plaintiff wrote complaints against Brown; and (9) Gibbons decided to assault Plaintiff to please Brown because Gibbons and Brown were lovers (see Motion I, Exhibit F, Defendant K. Gibbons' Responses to Plaintiff's Requests for Admissions, Responses Nos. 1, 2, 5, 6, 7, 11, 12, 13, 18). Defendant Gibbons also stated affirmatively: "I never assaulted Inmate Collier" (id., Response to Request No. 22).

In Defendant Brown's Responses, Defendant Brown denied that: (1) Plaintiff was removed from his cell on the day of the incident; (2) Brown watched as Gibbons forcefully pushed Plaintiff across the dayroom floor while Plaintiff was handcuffed; (3) Brown watched Gibbons take Plaintiff, handcuffed, to an office; (4) Brown saw Plaintiff sitting down, handcuffed, in the office; (5) LaCuesta was in

the office; (6) Brown witnessed Gibbons questioning Plaintiff about why Plaintiff was in the "hole" and about things Brown told Gibbons about Plaintiff, such as alleged mistreatment of female officers which Brown never witnessed; (7) Gibbons came behind Plaintiff and started to assault Plaintiff; (8) Gibbons yelled "Don't fuck with his female staff" and pointed at Brown; (9) Brown and Gibbons were lovers; and (10) Brown manipulated Gibbons to "retaliate, harass and assault" Plaintiff (see Motion I, Exhibit G, Defendant Brown's Responses to Plaintiff's Requests for Admissions, Responses Nos. 4, 5, 6, 7, 9, 10, 11, 14, 15, 17, 22). Brown affirmatively alleged: "No assault took place." (id., Response No. 21).

In Defendant LaCuesta's Responses to Plaintiff's Requests for Admissions, Defendant LaCuesta denied that: (1) on July 18, 2005, LaCuesta, Gibbons and Brown were present with Plaintiff, who was handcuffed, in an office with the door closed; (2) LaCuesta witnessed Plaintiff sitting in a chair handcuffed; (3) Gibbons questioned Plaintiff about why Plaintiff was in the "hole" and about things Brown had told Gibbons; (4) Gibbons told Plaintiff: "Don't fuck with his female staff"; and (5) LaCuesta witnessed Gibbons assaulting Plaintiff and did not stop the assault (see Motion I, Exhibit H, Defendant LaCuesta's Responses to Plaintiff's Requests for Admissions, Responses Nos. 1, 2, 4, 7, 13, 16). LaCuesta affirmatively alleged that he never witnessed Gibbons assault Plaintiff (id., Responses Nos. 13, 16).

///

///

As Defendants contend, Plaintiff's own exhibits show the

existence of genuine issues of material fact, e.g., whether the alleged assault ever occurred. Plaintiff's evidence is far from "conclusive." Therefore, Plaintiff is not entitled to summary judgment on his excessive force claim against Defendants Gibbons and LaCuesta.

**II. Motion for Summary Judgment with Respect to Claims Against Defendants Cortez, Terry and Mathews (Motion II)**

Plaintiff seeks summary judgment on his retaliation claims against Defendants Cortez, Terry and Mathews. Defendants have not submitted any evidence in opposition to Motion II. Defendants contend that Plaintiff's evidence is insufficient to support his claims, and that triable issues of fact exist precluding summary judgment for Plaintiff. Defendants also assert qualified immunity.

In support of Motion II, Plaintiff has provided a purported declaration of Plaintiff, which states in full:

> Tracy Collier declares under penalty of perjury, I am the Plaintif [sic] in case, the complaint alleges that I was a prisoner at CVSP and filed a grievance against prison guard who assualted [sic] Plaintif [sic] an [sic] was retailated [sic] against by Defendant Cortez Terry Mattew [sic] when place [sic] in punitive adseg for 10 months.

///

///

This purported declaration appears only to summarize the contents

of the complaint. The purported declaration is wholly insufficient to show entitlement to summary judgment on Plaintiff's claims against Defendants Cortez, Terry and Mathews. Plaintiff provides no other affidavit or declaration in support of Motion II. Plaintiff's Statement of Undisputed Facts in support of Motion II is not verified, and hence cannot serve as a supporting affidavit. See Estrella v. Brandt, 682 F.2d 814, 819-20 (9th Cir. 1982) (on summary judgment, statements in legal memoranda are not evidence).

In his unsworn Statement of Undisputed Facts in support of Motion II, Plaintiff alleges that, on August 18, 2005, Defendant Cortez placed Plaintiff in administrative segregation, allegedly in retaliation for Plaintiff's filing of a grievance concerning the alleged July 18, 2005 assault (Plaintiff's Statement of Undisputed Facts, "Issue One"). Plaintiff alleges that, on November 22, 2005, Defendants Terry and Mathews issued an allegedly illegal "lock-up order," directing the continuation of Plaintiff's administrative segregation placement, allegedly in retaliation for Plaintiff's filing of a grievance (id., "Issues [sic] Two"). Plaintiff alleges that, on December 22, 2005, Defendants Cortez and Terry retaliated against Plaintiff by confining Plaintiff in administrative segregation for ninety more days (id.). In support of these allegations, Plaintiff references, among other things, two exhibits.

The first exhibit is the Classification Committee report dated August 25, 2005, signed by Defendant Cortez as Chairperson (Motion II, Exhibit A). This report indicates that Plaintiff was present on that date "for initial review following his Ad/Seg placement on the date of

08-18-05" (id.). The exhibit states that, on August 15, 2005, Plaintiff "was placed in ASU to preserve the integrity of an investigation into his allegations of misconduct by Chuckawalla Valley State Prison Administrative Segregation Unit staff" (id.). The exhibit reflects the Committee's decision to retain Plaintiff in administrative segregation "pending investigation" (id.).

The second exhibit is the Classification Committee report dated December 22, 2005, showing Defendants Cortez, Terry and Mathews as the committee members (Motion II, Exhibit B). The report recites that, on August 19, 2005 [sic], Plaintiff "was placed in the Administrative Segregation Unit (ASU) to preserve the integrity of an investigation involving [Plaintiff's] allegation of misconduct against CVSP's staff (refer to CDC 602 Appeal Log #05-0741, in Miscellaneous section in Central File) following his ASU placement of 06-05-05 for Inmate Sexual Misconduct" (id.). As indicated previously, the report recites that Plaintiff had three rules violation reports for indecent exposure, sexual misconduct and masturbation, and states that the Riverside County District Attorney's Office accepted the case for prosecution, and a jury trial was pending (id.). The report also indicates that Plaintiff met the criteria set forth in a June 8, 2005 memorandum for referral to a Departmental Review Board for consideration of an indeterminate SHU term (id.).

These documents indicate that Plaintiff's grievance was the cause of his initial administrative segregation placement. However, although Plaintiff contends the administrative segregation placement and retention orders were retaliatory, Plaintiff's exhibits suggest at

least a triable issue of fact regarding whether Defendants had legitimate penological reasons for placing and retaining Plaintiff in administrative segregation, i.e.: the alleged need to preserve the integrity of the investigation into Plaintiff's grievance (see 15 Cal. Code Regs. § 3335(a)), and the alleged fact that Plaintiff met the criteria for consideration of an indeterminate SHU term. Plaintiff's evidence of retaliation is far from "conclusive." Because Plaintiff's own exhibits demonstrate the existence of genuine issues of material fact concerning the reason or reasons for Defendants' actions, Plaintiff is not entitled to summary judgment on his retaliation claims against Defendants Cortez, Terry and Mathews.

**ORDER**

Plaintiff's Motion for Summary Judgment with respect to his claims against Defendants Brown, Gibbons and LaCuesta (Motion I) is denied. Plaintiff's Motion for Summary Judgment with respect to his claims against Defendants Cortez, Terry and LaCuesta (Motion II) is

///

///

///

///

///

///

///

///

///

denied. In light of this disposition, the Court need not, and does not, reach the issues of qualified immunity. Similarly, Defendants' evidentiary objections are moot.

DATED: 2/2/09

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

Presented this 18th day of September, 2008, by:

CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE